The opinion of the court was delivered by
Haines, J.
. The appellant filed his bill of complaint in the Court of Chancery, alleging that “ The Boudinot Manufacturing Company,” which was chartered on the 12th of February, 1835, with a capital not to exceed two hundred thousand dollars, divided into shares of one hundred dollars each, was organized upon a capital of thirty thousand dollars, subscribed and paid for three hundred shares of the stock. That the company, after some years, suspended operations for want of funds, and that the complainant, with Philemon Dickerson, Samuel G. Wheeler, and John C. Benson, in the year 1843, agreed to become partners in the purchase of the capital stock of the company, with the intention of putting the same into operation. That the complainant, accordingly, purchased one hundred and twenty-six shares, Philemon Dickerson ninety-one shares, and Wheeler and Benson each five shares, and held them in trust each for the other. The remaining seventy-three shares were held by Stoutenburgh and Laffan, who refused to sell them.' Mr. Dickerson transferred one share to John M. Gould, for the purpose of making him eligible as a director.
A meeting of the stockholders was then called, and the complainant, with Messrs. Dickerson, Wheeler, Benson, and Gould, elected directors.
The affairs of the company being embarrassed, and large sums of money being required to pay the debts and to put the machinery in condition, for operation to advantage, the complainant and his associates agreed to advance a sum of money sufficient for the purpose, if Stoutenburgh and *521 Laffa'n would pay their proportion towards it, but they refused to advance any more money, or to sell their stock for any reasonable sum.
The associates, for the purpose of relieving themselves of this embarrassment, applied to the legislature and procured the passage of a supplement to the charter of the company. By this supplement they were authorized to increase the capital stock to three hundred thousand dollars, to be divided into shares of one hundred and fifty dollars each, and to demand from the stockholders an additional sum of fifty dollars on each share already subscribed for, by installments of ten dollars per share, on thirty days’ notice. The penalty for neglect of payment was the forfeiture of the stock.
The directors having, by a formal resolution, accepted the supplement, resolved to call in an installment of ten dollars on each share, payable on or before the first day of June then next, and gave the notice required.
Stoutenburgh and Laffan neglected to pay the installment, and the directors, on the sixth day of June,, declared their seventy-three shares to be forfeited to the company.
At the same time the complainant, on payment of the installment due upon the shares standing in his name, gave his check on the Bank of Hew York for twelve hundred and sixty dollars, payable to the order of Philemon Dickerson, president of the Boudinot Manufacturing Company, and each of the other associates gave some check or memorandum in writing for the installments due upon the shares held by them respectively. These checks, the complainant alleges, were given as their memoranda, to remain until they could transfer to the company certain machinery which they had purchased of one Hamilton Gay for sixteen thousand eight hundred dollars.
The company, then, in pursuance of the original understanding of the parties, agreed to purchase of the associates that machinery for twenty-six thousand eight hundred dollars, being an advance of ten thousand dollars upon their purchase of Mr. Gay.- In payment of this machinery, the company gave a mortgage upon it for twelve thousand dol *522 lars, and issued to the associates one hundred and fifty-two shares of the capital stock, which, at its par value of one hundred and ten dollars, amounted to the balance due them within the sum of eighty dollars.
The complainant, after this, purchased the interest of Wheeler, and, in September, 1845, Wood and Merritt purchased of the complainant all his interest in the company, after a balance sheet had been furnished to them, exhibiting the affairs of the corporation, but in which no mention was made of the check. It is alleged that it was understood by the directors that the check and memoranda given for the installments were paid off in the negotiation of the machinery, and were filed away among the canceled papers.
Wood and Merritt having become the owners of all the stock and effects of the company, brought an action at law upon the cheek, in the name of Philemon Dickerson, president of the Boudinot Manufacturing Company. After the commencement of that suit, certain creditors of the company procured an injunction, restraining them from the exercise of their corporate powers, and the appointment of receivers, who are prosecuting the action.
The bill in this cause was filed to stay the proceedings at law, and for specific and general relief.' An injunction was issued, and Messrs. Dickerson and Benson have filed their several answers. A general demurrer to the bill was filed on behalf of the receivers. The Chancellor, after argument, sustained the demurrer, and dismissed the bill.
From this decree the complainant appeals to this court, and the question is whether the demurrer was properly sustained..
The gravamen of the bill is that the complainant is sued at law against equity and good conscience. To maintain this position, it is insisted 2 First. That the check was given as a mere memorandum, to remain until the machinery should be transferred to the company, and that it was agreed by the company that it should be canceled upon such transfer being made.
The directors, in this matter, were proceeding under the *523 authority of the supplement to their charter. That act authorized them to demand from the stockholders the additional sum of fifty dollars on each share of the capital stock already subscribed, not exceeding ten dollars on each share, at any one time ; and, by way of penalty for neglect to pay after the proper notice, they might declare the stock forfeited.
This was fully understood by the directors, and promptly acted upon by them in their resolutions of the sixth of June, declaring the seventy-three shares of Stoutenburgh and Laffan to be forfeited to the company for default of payment. And upon their own construction it must be held that the check and other memoranda given by the directors individually were taken as cash, and. intended to be bona fide payments of the amounts mentioned in them ; otherwise their own stock became liable to forfeiture, and it is not to be supposed that they would impose upon others the penalty which they had themselves incurred.
If they were not intended as payments, the directors would be obnoxious to the charge of having procured the supplement and called in the installment, for the mere purpose of wresting from the hands of Stoutenburgh and Laffan by the forms of law, the shares of stock which they had failed to get by fair negotiation. The object of increasing the value of the shares was to raise funds to pay the debts and put the works in operation, and if the directors paid nothing upon their shares, they might be suspected of the design of raising funds out of their fellow-corporators, without making any advances themselves.
If these checks were not taken as payments, and to be collected and converted into money, then the directors must have ventured upon an expedient to raise funds to increase the nominal value of the stock, and to create a fictitious credit, which is but too common with the managers of corporations, but which a court of justice can neither uphold nor approve. Such transactions may be sanctioned by the code of those whose motto is
“ Rem, faeias rem,

Meets si possis ; si non, quoeunque modo rem,”

*524 but they cannot stand the test of law or equity. They who engage in them, whether tempted by the love of gain, or seduced by the force of example, must act upon their own responsibility, and at their own risk, and look t,o the end to justify the means. The aid or sanction of the courts they will seek in vain.
The suspicion, even, of this, we cannot entertain towards these directors. Their character should be a guarantee of the honesty of their intentions, and the alternative is, that the check was taken as a payment, to be converted into money for the purposes mentioned in the bill.
Secondly. It is urged that the action at law is against equity, because thé check was considered to have been paid, and was meant to be canceled.
The allegation of payment is accompanied by a statement of the manner in which it was done, to wit, that the machinery purchased of Mr. Gay, was conveyed to the company at an advance of ten thousand dollars; and that, in the estimates, and by the understanding of the directors, the whole stock was paid by this and other machinery.
It is unnecessary for the purpose of this suit, to inquire into the validity of this sale by the associates, as individuals, to themselves, as directors, at such an advance; or of its influence upon their creditors and the public. It is sufficient that it appears by the bill that the company directed the issue to the associates of one hundred and fifty-two shares of the capital stock, of the par value of sixteen thousand seven hundred and twenty dollars, expressly to pay for the machinery, and that by it they did pay to within eighty dollars of the sum of sixteen thousand eight hundred dollars, paid by the associates from their own funds to Mr. Gay. The machinery, therefore, cannot be considered as a payment of the check and memoranda given for the installment.
Upon, the merits of the case, as made by the complainant, the bill was properly dismissed.
There is another reason why the demurrer was well sustained. The bill does not present a case in which the aid of a court of equity is required. It does not seek a discovery *525 to enable the complainant to make out his defence. There is no allegation in it that is not proper to be proved at law. The whole transaction is within the knowledge of some or all of the associates, and they are competent witnesses. The books and papers can be procured on notice or by process, or their contents be proved. The prayer that the check be given up to be canceled is that which every defendant at law might make, and if with success, he would find an easy way of changing the forum of every action. The contribution prayed for is a matter entirely between the associates, and cannot be considered in a suit between the owner of the check and the complainant. If the facts presented by the bill afford a defence, the complainant has adequate relief at law, and a court of equity should not take jurisdiction of the case.
Let the decree be affirmed, with costs.
Decree affirmed unanimously.